UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY G. GILL,

                              Plaintiff,

         v.                                                      9:02-CV-1380
                                                                  (TJM/GHL)
KATHLEEN FRAWLEY, R.N., Elmira C.F.;
CHARLIE PEET, Correction Officer, Elmira C.F.;
and S. GRAUBARD, Inmate Grievance Program
Supervisor, Elmira C.F.,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

ANTHONY G. GILL
    Plaintiff, *Pro Se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821-0051

HON. ELIOT L. SPITZER                              SENTA B. SIUDA, ESQ.
Attorney General for the State of New York    Assistant Attorney General
    Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2465

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule N.D.N.Y. 72.3(c).  In this *pro se* civil rights complaint brought under 42 U.S.C. §

1983, Inmate Anthony G. Gill ("Plaintiff") alleges that Elmira Correctional Facility ("Elmira

C.F.") Nurse Kathleen Frawley, Elmira C.F. Correction Officer ("C.O.") Charlie Peet, and

Elmira C.F. Inmate Grievance Program Supervisor Sheryl Graubard (collectively "Defendants")
violated his rights under the First, Eighth, and Fourteenth Amendments when (1) on April 23,
2002, Defendants Frawley and Peet recklessly and without cause confiscated Plaintiff's
medically authorized custom-made arch supports with metal inserts, and subsequently lost or
destroyed those arch supports, and (2) at some point between April 29, 2002, and July 12, 2002,
Defendant Graubard failed to file, process and hold a hearing on Plaintiff's April 29, 2002,
grievance against Defendants Frawley and Peet regarding those arch supports.  (Dkt. No. 1.)

Currently before the Court is Defendants' motion for summary judgment.  (Dkt. No. 55.)
Generally, Defendants' motion raises the following four issues: (1) whether Plaintiff has failed to
establish (or even state) a claim against Defendant Graubard under the First and/or Fourteenth
Amendments for improperly handling his grievance; (2) whether Plaintiff has failed to establish
(or even state) a claim against Defendants Frawley and Peet under the Eighth Amendment for
deliberate indifference to a serious medical need; (3) whether Plaintiff has failed to exhaust his
administrative remedies with regard to his claim under the Eighth Amendment that Defendants
Frawley and Peet improperly confiscated his arch supports; and (4) whether Defendants are
entitled to qualified immunity.  (Dkt. No. 55, Part 6 [Defs.' Mem. of Law].)

For the reasons discussed below, I answer the first two questions in the affirmative (and
thus do not have to reach the second two questions).  As a result, I recommend that Defendants'
motion for summary judgment be granted.

I.      SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

2

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a

genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all

reasonable inferences against the moving party.  *Schwapp v. Town of Avon*, 118 F.3d 106, 110

(2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990)

[citation omitted].

However, when the moving party has met its initial burden of establishing the absence of

any genuine issue of material fact, the nonmoving party must come forward with "specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita*

*Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The

nonmoving party must do more than "simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 477 U.S. 574, 585-

86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "A dispute

regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8

(W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with

which the Court must view a *pro se* plaintiff's pleadings and papers, and a civil rights plaintiff's

pleadings and papers.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se*

civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights

---

[1]     A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights

action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000)

(unpublished decision).  For example, where a civil rights plaintiff is proceeding *pro se*, and the

defendant has filed a dispositive motion, the Court must construe the plaintiff's complaint and

opposition papers liberally so as to raise the strongest arguments that they suggest.  *See Weixel v.*

*Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil

rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment

in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for

summary judgment in civil rights case).

  However, although "[t]he work product of *pro se* litigants should be generously and

liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws

that have been violated renders [an] attempt to oppose defendants' motion ineffectual." *Kadosh*

*v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).  In other

words,  "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to

survive a motion for summary judgment." *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-

10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v.*

*Selsky*, 251 F. Supp.2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].

  Moreover, "there are circumstances where an overly litigious inmate, who is quite

familiar with the legal system and with pleading requirements, may not be afforded such special

solicitude." *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n.10

(N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 lawsuits in the Northern District

alone); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (N.D.N.Y. March

31, 2005) (Treece, M.J.) (plaintiff had filed 20 lawsuits in Northern District alone).[2]  I note that,

in such cases, the overly litigious inmate is not subjected to a heightened pleading requirement,

only denied the leniency normally afforded to *pro se* litigants and civil rights litigants.

Here, the circumstances warrant denying Plaintiff the leniency normally afforded to *pro

se* civil rights litigants, for the reasons stated by Defendants in their Memorandum of Law.  (Dkt.

No. 55, Part 6, at 2-4 [Defs.' Mem. of Law].)  Most notably, the Second Circuit has recognized

Plaintiff as "no stranger either to the grievance system or to the federal courts."  *Gill v.

Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).  Furthermore, this Court recently denied Plaintiff

the leniency normally afforded to *pro se* civil rights litigants.  *Gill v. Riddick*, 03-CV-1436, 2005

U.S. Dist. LEXIS 5374, at *7 & note 3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (listing 20

cases filed by Mr. Gill in this District alone).  I would add only that, in addition to the 20 or more

cases that Plaintiff has filed in this District, Plaintiff has filed at least five other cases in the

---

[2]     *See also Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (declining to afford a
*pro se* civil rights inmate the sort of lenient treatment normally afforded *pro se* civil rights
litigants, because the inmate was "an extremely litigious inmate who is quite familiar with the
legal system and with pleading requirements," who at one point had at least 30 simultaneously
pending lawsuits); *Johnson v. Eggersdorf*, 97-CV-0938, Report-Recommendation, at 1, n.1
(N.D.N.Y. Apr. 28, 1999) (Smith, M.J.) (denying leniency to *pro se* civil rights inmate who at
one point had 12 simultaneously pending lawsuits in Northern District), *adopted*, 97-CV-0938,
Decision and Order (N.D.N.Y.  May 28, 1999) (Kahn, J.), *aff'd*, 8 Fed. Appx. 140 (2d Cir. May
17, 2001) (unpublished opinion); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y.
2000) (applying *Davidson* to *pro se* civil rights inmate who had 10 suits pending in district);
*Brown v. Selsky*, 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n.1 (W.D.N.Y. Jan. 10, 1995)
(denying leniency to *pro se* civil rights inmate who had seven cases pending in district); *but see
McFadden v. Goord*, 04-CV-0799, 2006 WL 681237, at *1, n.3 (N.D.N.Y. March 14, 2006)
(Kahn. J.) (refusing to deny leniency to *pro se* civil rights inmate, despite fact that he had seven
cases pending in other districts in mid-1990s).

Case 9:02-cv-01380-TJM-GHL   Document 60   Filed 05/09/06   Page 6 of 37

Southern District of New York.[3]

Based on a cursory review of these cases, it appears that Plaintiff currently has two

"strikes" pending against him for purposes of 28 U.S.C. § 1915(g)'s "three strikes rule." *See Gill*

*v. DeFrank*, 8 Fed. Appx. 35 (2d Cir. 2001) (affirming district court's grant of summary

judgment to defendants); *Gill v. Pflueger*, 02-CV-0130, Report-Recommendation (N.D.N.Y.

Nov. 14, 2002) (DiBianco, M.J.) (recommending that district judge grant defendants' motion to

dismiss for failure to state a claim), *adopted by* Order (N.D.N.Y. Jan. 30, 2003) (Hurd, J.).

## II.   STATEMENT OF MATERIAL FACTS

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken

as true to the extent those facts are supported by the evidence in the record[4] and are not

---

[3]      *See Gill v. DeFrank*, No. 00-0235, 2001 U.S. App. LEXIS 7103 (2d Cir. Apr. 16, 2001) (affirming order of U.S. District Court for Southern District of New York granting summary judgment to defendants); *Gill v. Jones*, 95-CV-9031, 2001 U.S. Dist. LEXIS 17674 (S.D.N.Y. Oct. 31, 2001) (granting defendants' motion for summary judgment); *Gill v. Bracey*, 99-CV-10429, 2001 U.S. Dist. LEXIS 9875 (S.D.N.Y. July 11, 2001) (granting defendants' motion for summary judgment); *Gill v. PACT Org.*, 95-CV-4510, 1997 U.S. Dist. LEXIS 13063 (S.D.N.Y. Aug. 28, 1997) (granting defendants' motion for summary judgment); *Gill v. Gilder*, 95-CV-7933, 1997 U.S. Dist. LEXIS 1236 (S.D.N.Y. Feb. 10, 1997) (granting defendants' motion for summary judgment).

[4]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

6

specifically controverted by the non-movant.[5]  A district court has no duty to perform an

independent review of the record to find proof of a factual dispute.[6]  In the event the district court

chooses to conduct such an independent review of the record, any verified complaint filed by the

plaintiff should be treated as an affidavit.[7]

However, to be sufficient to create a factual issue, an affidavit (or verified complaint)

must, among other things, be based "on personal knowledge."[8]  An affidavit (or verified

complaint) is not based on personal knowledge if, for example, it is based on mere "information

---

[5]      *See* Local Rule 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts
shall be deemed admitted unless specifically controverted by the opposing party</u>.").

[6]      *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)
("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an
obligation on a district court to perform an independent review of the record to find proof of a
factual dispute.") (citations omitted); *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App.
LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-
13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v.
Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy,
J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295
(N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v.
Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[7]      *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A]
verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary
judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff
"was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert.
denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified
complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted];
Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . .
show that there is no genuine issue as to any material fact . . . .").

[8]      Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on
personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private
Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations
omitted], *cert. denied sub nom.*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

and belief" or hearsay.[9]  In addition, such an affidavit (or verified complaint) must not be

conclusory.[10]  An affidavit (or verified complaint) is conclusory if, for example, its assertions

lack any supporting evidence or are too general.[11]  Moreover, "[a]n affidavit must not present

---

[9]  *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be
made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . .
[Furthermore, the Rule's] requirement that the affiant have personal knowledge and be
competent to testify to the matters asserted in the affidavits also means that the affidavit's
hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient
to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d
Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon
information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's]
affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is
insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top
Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor
and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting
affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[10]  *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts
showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor
is a genuine issue created merely by the presentation of assertions [in an affidavit] that are
conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule
56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from
degenerating into mere elaboration of conclusory pleadings").

[11]  *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S.
829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]
with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

legal arguments."[12]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[13]

While I apply these legal principles below in the Analysis section of this Report-Recommendation (to the extent necessary), I pause to make three general observations.  First, Defendants' Rule 7.1 Statement is very brief.  (Dkt. No. 55, Part 3.)  Second, Plaintiff's Rule 7.1 Response violates Local Rule 7.1(a)(3) by not mirroring Defendants' Rule 7.1 Statement in

---

[12]     N.D.N.Y. L.R. 7.1(a)(2).

[13]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

9

matching numbered paragraphs, and by often not setting forth a specific citation to the record

where an (alleged) factual issue arises.  (Dkt. No. 58 [attaching document entitled "Plaintiff's

Affirmation / 7.1(e) Statement"].)  Third, although Plaintiff's Complaint is verified, several

paragraphs of that Verified Complaint are made on "information and belief."  (Dkt. No. 1,

Attached "Statement of Facts," ¶¶ 4, 5, 21, 27, & n.1, 3.)

## III.    ANALYSIS

### A.    Whether Plaintiff Has Failed to Establish (or Even State) a Claim Against Defendant Graubard Under the First and/or Fourteenth Amendments for Improperly Handling His Grievance

Plaintiff asserts the following allegations against Defendant Graubard: (1) that, during the

days and weeks following the filing of Plaintiff's grievance against Defendants Frawley and Peet

on April 29, 2002 (regarding their confiscation of Plaintiff's arch supports on April 23, 2002),

Defendant Graubard failed to "process," and hold a hearing on, that grievance, and (2) that, at

some point, between April 29, 2002, and July 12, 2002 (when Defendant Graubard wrote a

memorandum to Plaintiff stating that she could find no such grievance at Elmira C.F.),

Defendant Graubard destroyed or lost that grievance, claiming on July 12, 2002 that it had never

been filed.[14]  Plaintiff alleges that, through these actions, Defendant Graubard "violated

plaintiff['s] [rights under the] 1st and 14th Amendment of the U.S. Constitution [and] DOCS'

Directive 4040."[15]

Defendants argue that Plaintiff has failed to establish (or even state) a claim against

---

[14]    (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26, 30, 31, n.4, & Exs. G, H [Plf.'s Compl.].)

[15]    (Dkt. No. 1, Attached "Statement of Facts," ¶ 31 [Plf.'s Compl.].)

Defendant Graubard under the First or Fourteenth Amendments with regard to the handling of

Plaintiff's (alleged) April 23, 2002 grievance, because, even if Defendant Graubard failed to

comply with New York State grievance procedures (as set forth in DOCS Directive No. 4040),

such a failure would not constitute a violation of the First or Fourteenth Amendments.[16]

Plaintiff fails to respond to this argument.[17]  Defendants are correct to the extent that they

argue that, by failing to respond to Defendants' argument, Plaintiff may be deemed to have

"consented" to that argument under Local Rule of Practice 7.1(b)(3).[18]  However, Defendants are

incorrect to the extent they argue that this failure by Plaintiff *automatically* results in the

dismissal of Plaintiff's First and Fourteenth Amendment claims against Defendant Graubard with

regard to the handling of Plaintiff's (alleged) April 23, 2002 grievance.[19]  As a threshold matter,

---

[16]    (Dkt. No. 55, Part 6 at 6-7 [Def.'s Mem. of Law].)

[17]    (Dkt. No. 58 [Plf.'s Response Papers].)

[18]    *See Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1[b][3]); N.D.N.Y. L. R. 7.1(b)(3) ("Where a properly
filed motion is unopposed and the Court determines that the moving party has met its burden to
demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or
serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the
motion, as the case may be, unless good cause is shown."); N.D.N.Y. L.R. 7.1(a) (requiring
opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf.*
Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided
in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that
there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if
appropriate, shall be entered against the adverse party.") [emphasis added].

[19]    (Dkt. No. 59, Part 1, ¶ 12 [Defs.' Reply Affirm.].)

of course, the Court must always determine whether a movant's legal argument has merit.[20]  As a

result, I must pass on the merits of Defendants' argument.

I agree with Defendants that the manner and timing in which grievances are *investigated*

and *decided* (e.g., as set forth in DOCS Directive No. 4040) do not create a protected liberty

interest.[21]  (Indeed, I would add that the violation of a DOCS Directive, alone, is not even a

violation of New York State law or regulation;[22] this is because a DOCS Directive is "merely a

system the [DOCS] Commissioner has established to assist him in exercising his discretion,"

---

[20]        *See* Fed. R. Civ. P. 56(e) ("If the adverse party does not . . . respond [with
affidavits or other papers setting forth specific facts showing that there is a genuine issue for
trial], summary judgment, *if appropriate*, shall be entered against the adverse party."); N.D.N.Y.
L.R. 7.1(b)(3) (providing that "the non-moving party's failure to file or serve . . . [opposition]
papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is
shown," *only where* the motion has been "properly filed" and "the Court determines that the
moving party has met its burden to demonstrate entitlement to the relief requested therein.");
*Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) ("The fact that there has been no response to
a summary judgment motion does not, of course, mean that the motion is to be granted
automatically.").

[21]        *See, e.g.*, *Odom v. Poirier*, 99-CV-4933, 2004 U.S. Dist. LEXIS 25059, at *35-38
(S.D.N.Y. Dec. 10, 2004) ("[T]he manner in which grievance investigations are conducted [as set
forth in DOCS Directive No. 4040] do not create a protected liberty interest."); *Torres v.
Mazzuca*, 246 F. Supp.2d 334, 342 (S.D.N.Y. 2003) ("The corrections officers' failure to
properly address [plaintiff's] grievance by conducting a thorough investigation to his satisfaction
does not create a cause of action for denial of due process because [plaintiff] was not deprived of
a protected liberty interest."); *Mahotep v. DeLuca*, 3 F. Supp.2d 385, 389, n.3 (W.D.N.Y. 1998)
(dismissing claim in which inmate alleged that director of inmate grievance program "violated
his 14th Amendment rights by lying and forging documents and by failing to conduct a fair and
impartial investigation into grievances that [the inmate] filed against certain correction officers");
*Harris v. Keane*, 962 F. Supp. 397, 406 (S.D.N.Y. 1997) ("[T]he prison regulations requiring that
a grievance disposition be returned with 15 days does not create an interest to which due process
rights attach.").

[22]        *See Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) (citation
omitted); *Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997).

which he retains, despite any violation of that Directive.[23])  Clearly, however, the right to *file* a

prison grievance is protected by the First and Fourteenth Amendments.[24]  Here, part of Plaintiff's

claim against Defendant Graubard is that she interfered with Plaintiff's properly filed grievance,

losing or destroying that grievance (and, in effect, rendering that grievance "not filed").

However, Plaintiff's claim against Defendant Graubard for interfering with Plaintiff's

right to file a grievance still fails because, to succeed on such a claim (whether it is asserted

under the First or Fourteenth Amendments), Plaintiff must allege and establish that Defendant

Graubard acted intentionally or deliberately;[25] and, here, no such allegation or evidence exists.

---

[23]     *See Farinaro v. Coughlin*, 642 F. Supp. 276, 280 (S.D.N.Y. 1986).

[24]     *See United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)
("[T]he right[] to . . . petition for a redress of grievances [is] among the most precious of the
liberties safeguarded by the Bill of Rights."); *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.
2002) ("Filing a grievance is protected activity."); *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.
1996) ("[Plaintiff's] filing of a grievance . . . is constitutionally protected. . . .   Retaliation against
a prisoner for pursuing a grievance violates the right to petition [the] government for the redress
of grievances guaranteed by the First and Fourteenth Amendments and is actionable under §
1983); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have
a constitutional right of access to the courts and to petition the government for the redress of
grievances, and prison officials may not retaliate against prisoners for the exercise of that
right."); *Odom v. Poirier*, 99-CV-4933, 2004 U.S. Dist. LEXIS 25059, at *37 (S.D.N.Y. Dec. 10,
2004) ("[T]he filing of grievances is constitutionally protected . . . ."); *Salahuddin v. Mead*, 95-
CV-8581, 2002 U.S. Dist. LEXIS 15827, at *9 (S.D.N.Y. Aug. 26, 2002) ("Filing a grievance
against a prison officer is protected by the First and Fourteenth Amendments of the U.S.
Constitution. . . .   Because filing a grievance is constitutionally protected, retaliation against
prisoners who file grievances is actionable under § 1983."); *Walker v. Pataro*, 99-CV-4607, 2002
U.S. Dist. LEXIS 7067, at *60 (S.D.N.Y. Apr. 23, 2002) ("The law is clear that prison officials
may not retaliate against an inmate for exercising his constitutional rights, including the right to
file a prison grievance.").

[25]     *See, e.g.*, *Graham*, 89 F.3d at 80 ("Intentional obstruction of a prisoner's right to
seek redress of grievances is precisely the sort of oppression that section 1983 is intended to
remedy.") [internal quotation marks, ellipses and citations omitted].  For example, to the extent
that Plaintiff is alleging that Defendant Graubard *retaliated* against Plaintiff (by losing or
destroying Plaintiff's grievance) for Plaintiff having exercised his First Amendment right to file a

Rather, *at most*, the evidence might indicate some neglect on the part of Defendant Graubard. However, negligence is not enough to give rise to an action under Section 1983.[26]

For example, noticeably absent from this case is any evidence (or even an allegation) that, during the expiration of the 14-day time period in which Plaintiff had to file his grievance, (1) Defendant Graubard instructed Inmate Grievance Sergeant Volker or an Inmate Grievance Clerk to represent to Plaintiff that his grievance had been received and filed, and that a hearing was imminent, or (2) Defendant Graubard even knew that those two individuals had (allegedly) been making such representations.  Plaintiff does not even expressly and non-conclusively allege that Defendant Graubard was *aware* that Plaintiff had filed a grievance on April 29, 2002.

The closest Plaintiff comes to alleging any personal involvement of Defendant Graubard in the apparent misunderstanding or mistake following the apparent filing of Plaintiff's grievance on April 29, 2002 is when Plaintiff alleges, in an attachment to his Complaint, that (1) Defendant Grabuard "regularly sent" the Inmate Grievance Clerk in question to Plaintiff's cell for an "interview," and (2) on May 28, 2002, Plaintiff wrote to Defendant Graubard inquiring about the status of his grievance.[27]  However, these allegations are not verified.  I am not inclined to treat them as verified by deeming them incorporated by reference in the Verified Complaint, given

---

grievance, if Plaintiff does not allege and establish that Defendant Graubard was acting intentionally, he cannot meet the *causation* element of the three-part retaliation test, i.e., that it was the filing of the grievance (and not, say, simple neglect or an excusable mistake) that *caused* Defendant Graubard to lose or destroy Plaintiff's grievance.

[26]      *See Herrera v. Scully*, 815 F. Supp. 713, 726 (S.D.N.Y. 1998) ("[E]ven if [the inmate's] allegations are held to support the claim that the Defendants acted negligently in violating the Directives [including DOCS Directive No. 4040], such negligent violations of [that Directive] still does not give rise to a § 1983 cause of action]).

[27]      (Dkt. No. 1, Ex. H [Plf.'s Grievance No. MHK-6858-02].)

14

Plaintiff's loss of special status as a *pro se* civil rights litigant (due to his litigiousness). Even if I were so inclined, the allegations would not create an issue of fact. Plaintiff does not allege that the reason Defendant Graubard (allegedly) "regularly sent" the Inmate Grievance Clerk in question to Plaintiff's cell to interview, or be interviewed by, Plaintiff was to talk to Plaintiff *about Plaintiff's April 29, 2002 grievance* (as opposed to some other subject).[28] Furthermore, Plaintiff does not attach a copy of his alleged May 28, 2002 letter to Defendant Graubard, or even allege that Defendant Graubard even read the letter (indeed, Plaintiff admits that Defendant Graubard did not respond to the letter).[29]

As a result, I recommend that the Court dismiss Plaintiff's First Amendment claim and Fourteenth Amendment claim against Defendant Graubard.

### B. Whether Plaintiff Has Failed to Establish (or Even State) a Claim Against Defendants Frawley and Peet under the Eighth Amendment for Deliberate Indifference to a Serious Medical Need

Defendants correctly recite the legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment. Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a *sufficiently serious* medical need; and (2) that Defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Defendants argue that Plaintiff's claim for deliberate indifference to his "deformity in both feet" should be dismissed because Plaintiff has failed to establish either that (1) his deformity constituted a *sufficiently serious* medical condition for purposes of the Eighth

---

[28]    (*Id.*)

[29]    (*Id.*)

15

Amendment, or (2) any Defendant exhibited the sort of reckless disregard necessary to show *deliberate indifference* to that serious medical condition for purposes of the Eighth Amendment.[30]

## 1.     Serious Medical Need

I agree with Defendants that Plaintiff's medical condition does not constitute a serious medical need for purposes of the Eighth Amendment, although I reach this conclusion based on somewhat different reasons than those offered by Defendants.

Plaintiff alleges (and the evidence indicates) that, at the time of the alleged deprivation in question, he had (1) a birth defect consisting of "deformity in both feet" which resulted in, at various times, prescriptions for orthopedic footwear (e.g., custom-made arch supports, a/k/a "orthoses" or "orthotics," with extra-deep boots), and (2) a bulging disc in his spine ("spondylosis"), arthritis in both knees, and lower back pain.[31]

After carefully considering the relevant case law, I conclude that Plaintiff's medical conditions, even when considered together, do not constitute a sufficiently serious medical condition for purposes of the Eighth Amendment because they do not constitute a "condition of

---

[30]       (Dkt. No. 55, Part 6 at 8-17 [Def.'s Mem. of Law].)

[31]       (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 1, 3, 7, 10, 11, 23, 29 & Exs. A, B, D, E, F [Plf.'s Verified Compl., often associating his foot condition with his knee condition and back pain, and attaching his medical records]; Dkt. No. 55, Parts 3-4, ¶¶ 8-10 & Exs. E-G [Defs.' Rule 7.1 Statement, attaching Plf.'s medical records]; Dkt. No. 58, Exs. A-E [Plf.'s Rule 7.1 Response, attaching Plf.'s medical records]; Dkt. No. 55, Part 4, at 22, 29-30 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg*, 02-CV-0082, N.D.N.Y.]; Dkt. No. 55, Part 4, at 65 [Ex. D to Defs.' Rule 7.1 Statement, attaching Apr. 29, 2003 trial testimony of Plaintiff from *Gill v. Butero*, 01-CV-0082, N.D.N.Y.)]; *see also* Dkt. No. 26 at 1 [Order of Judge McAvoy, dated 9/26/03, including Plf.'s spondylosis, knee arthritis, and lower back pain among facts material to motion to dismiss].)

urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996).  Specifically, in reaching my conclusion, I rely on numerous cases that are factually analogous to the present case.[32]  Plaintiff does not, in his response papers, offer any case law or evidence that leads me to another conclusion.[33]

I note that my conclusion that Plaintiff's medical condition is not sufficiently serious for purposes of the Eighth Amendment is further supported by certain of Plaintiff's deposition and trial testimony submitted by Defendants–specifically, that (1) on June 4, 2003, Plaintiff testified

---

[32]	*See*, *e.g.*, *Veloz v. State of New York*, 339 F. Supp. 2d 505, 511, 522-527 (S.D.N.Y. 2004) (painful and degenerative spondylosis was not serious medical need, but physical ailments resulting from botched surgery to alleviate that back problem, which ailments included loss of feeling from waist down and severe bladder problems, was serious medical need); *McKinnis v. Williams*, 00-CV-8357, 2001 U.S. Dist. LEXIS 10979, at *2, 9-10 (S.D.N.Y. Aug. 7, 2001) (prisoner's foot problem, which required "medical shoes" that were flat, was not sufficiently serious); *Chatin v. Artuz*, 95-CV-7994, 1999 U.S. Dist. LEXIS 11918, at *4-6, 11 & n.5 (S.D.N.Y. Aug. 4, 1999) (prisoner's foot condition, which involved pain and swelling and required "orthotic" arch supports, was not sufficiently serious), *aff'd*, No. 99-0266, 2002 U.S. Dist. LEXIS 86 (2d Cir. Jan. 3, 2002) (unpublished opinion); *Veloz v. New York*, 35 F. Supp.2d 305, 309, 312 (S.D.N.Y. 1999) (prisoner's foot problem, which involved arthritis and pain, and which required "a better shoe and sneaker with a built-in arch support" was not sufficiently serious); *Alston v. Howard*, 925 F. Supp. 1034, 1038-1040 (S.D.N.Y. 1996) (prisoner's ankle condition, which caused pain in ankle and foot, and which caused Plaintiff to receive a prescription for orthopedic boots, was not sufficiently serious); *Cole v. Scully*, 93-CV-2066, 1998 U.S. Dist. LEXIS 5127, at *3-7, 12-20 (S.D.N.Y. Apr. 18, 1995) (prisoner's foot problem, and resulting pain, which required him to wear special footwear, including extra-wide boots and sneakers, was not sufficiently serious), *aff'd*, No. 95-2274, 1995 U.S. App. LEXIS 39859 (2d Cir. Nov. 21, 1995) (unpublished opinion); *see also Dixon v. Nusholtz*, No. 98-1637, 1999 U.S. App. LEXIS 13318, at *1, 5 (6th Cir. 1999) (prisoner's need for orthopedic shoes was not a "grave medical need" under Eighth Amendment); *Jackson v. O'Leary*, 89-CV-7139, 1990 U.S. Dist. LEXIS 17249, at *2, 4 (1990) (N.D. Ill. Dec. 17, 1990) (prisoner's foot problem requiring him to wear only soft gym shoes was not one of "especially grave concern" for purposes of Eighth Amendment).

[33]	(Dkt. No. 58, ¶¶ 31-38 & Ex. A [Plf.'s Rule 7.1 Response].)

that he "never" uses a wheelchair,[34] and (2) on April 29, 2003, and June 4, 2003, Plaintiff

testified that he walks on a treadmill and does squats (among other things) for exercise.[35]

However, I also note that I do not rely on certain other deposition testimony offered by

Defendants, in which (1) Plaintiff admits that he played football, tennis and baseball in high

school,[36] and (2) in listing his physical disabilities on June 4, 2003, he included several

conditions (e.g., a bulging disc or spondylosis) but not any condition regarding his feet.[37]  The

materiality of the first piece of testimony appears suspect, in my opinion, given that Plaintiff was

47 years of age at the time of the alleged deprivation–presumably about 30 years after he

apparently played sports in high school.  Also appearing suspect, in my opinion, is the materiality

of the second piece of testimony.[38]  The proffered materiality of this testimony appears to be that

it supports the conclusion that Plaintiff's foot condition was not a "disabling medical

---

[34]     (Dkt. No. 55, Part 4, at 29-30, 67-68 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg*, 02-CV-0082, N.D.N.Y.].)

[35]     (Dkt. No. 55, Part 4, at 65-66, 71 [Ex. D to Defs.' Rule 7.1 Statement, attaching Apr. 29, 2003 trial testimony of Plaintiff from *Gill v. Butero*, 01-CV-0082, N.D.N.Y.)].)

[36]     (Dkt. No. 55, Part 4, at 53 [Ex. B to Defs.' Rule 7.1 Statement, attaching Plf.'s Feb. 6, 2002 deposition testimony from *Gill v. Calscibetta*, 00-CV-1553, N.D.N.Y.].)

[37]     (Dkt. No. 55, Part 4, at 22 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg*, 02-CV-0082, N.D.N.Y.].)

[38]     I will assume, for the sake of argument, that this testimony is consistent with Plaintiff's prior and subsequent testimony at his June 4, 2003 deposition (only page 22 of this testimony is included, not the pages immediately before and after that page), and that Plaintiff did not (when offering this testimony) intend to imply that his bulging disc problem somehow included his foot deformity.

condition."[39]  However, I do not understand how that issue (regarding whether Plaintiff's foot condition was "disabling") relates to the issue at hand in this litigation (regarding whether Plaintiff's condition was "sufficiently serious" for purposes of the Eighth Amendment).  In any event, it appears beyond reasonable dispute that Plaintiff has adduced at least *some* evidence that he had a foot deformity at the time in question (although that deformity does not rise to the level of a sufficiently serious medical condition for purposes of the Eighth Amendment).

Because I find that Plaintiff's medical condition is not sufficiently serious for purposes of the Eighth Amendment, I need not reach Defendants' alternative argument that Plaintiff has failed to establish deliberate indifference.  However, for the sake of thoroughness, I will briefly address that argument.

### 2.    Deliberate Indifference

I find that, even if Plaintiff's medical condition were sufficiently serious, Plaintiff has adduced no evidence establishing that Defendants Frawley or Peet acted with deliberate indifference when, on April 23, 2002, they confiscated Plaintiff's arch supports and subsequently refused to return them.[40]  I reach this conclusion for the same reasons as advanced by Defendants in their motion papers.[41]

In particular, I note three facts.  First, the confiscation of Plaintiff's arch supports by Defendants Frawley and Peet was not wholly arbitrary but apparently premised on a legitimate security concern–(1) the arch supports, which contained metal inserts, could be used to

---

[39]        (Dkt. No. 55, Part 6, at 9 [Defs.' Mem. of Law].)

[40]        (*See*, *e.g.*, Dkt. No. 58, ¶¶ 14-16, 31-38 & Exs. A-D [Plf.'s Rule 7.1 Response].)

[41]        (Dkt. No. 55, Part 6, at 12-17 [Defs.' Mem. of Law].)

manufacture a shank or weapon,[42] (2) Defendant Peet had come to understand that, while

incarcerated, Plaintiff had been convicted of possessing a weapon and/or committing an assault,[43]

and (3) Defendant Frawley could find no indication in Plaintiff's medical records that he needed

arch supports with *metal* inserts (as opposed to arch supports with plastic inserts).[44]  Second,

Plaintiff was seen by medical professionals for various reasons at least eight times over the six

weeks following the confiscation.[45]  For example, on June 3, 2002, when Plaintiff complained to

medical professionals of pain, he was excused from school and work, was allowed to eat in his

cell, and was permitted to walk with a cane.[46]  Third, by at least May 21, 2002, Plaintiff was

permitted to use another pair of custom-made arch supports, which were already in his

---

[42]       (Dkt. No. 1, Attached "Statement of Facts," ¶ 15 [Plf.'s Verified Compl.]; Dkt. No. 55, Part 4, at Ex. E-2 [Defs.' exhibits, attaching Plf.'s medical record dated 4/23/02, by Nurse Frawley, concerning security concerns from Plf.'s metal arch supports].)

[43]       (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 15-16 [Plf.'s Verified Compl.].)

[44]       (Dkt. No. 1, Attached "Statement of Facts," ¶ 16 [Plf.'s Verified Compl.]; Dkt. No. 1, Ex. A [Plf.'s Verified Compl., attaching medical record dated 11/3/93, regarding prescription of "custom-made Aliplast/plastazote laminate orthoses"]; Dkt. No. 1, Ex. B [Plf.'s Verified Compl., attaching medical records date 2/8/01, indicating that he was prescribed "a pair of new boots," not specifying that they were to contain *metal* inserts]; Dkt. No. 55, Part 4, at Ex. E-1 [Defs.' exhibits, attaching Plf.'s medical record dated 4/9/02, indicating merely that Plaintiff had received a prescription for "arch supports . . . for size 9 boots," not for arch supports with metal inserts, as opposed to plastic inserts]; Dkt. No. 55, Part 4, at Ex. E-2 [Defs.' exhibits, attaching Plf.'s medical record dated 4/18/02, indicating that Plaintiff had requested permit for "metal braces & metal arch supports," apparently  acknowledging need for such a permit].)

[45]       (Dkt. No. 55, Part 4, at Exs. E-2, E-3 [Defs.' exhibits, attaching Plf.'s medical records dated 5/14/02, 5/17/02, 5/21/02, 5/30/02, 5/31/02, 6/3/02, 6/7/02, and 6/10/02]; Dkt. No. 1, ¶¶ 20-21 & Ex. F [Plf.'s Verified Compl.].)

[46]       (Dkt. No. 55, Part 4, at E-5 [Ex. E to Def.'s Mem. of Law, attaching Plf.'s medical record dated 6/3/02].)

possession (i.e., ones with plastic inserts);[47] and by July 1, 2002, Plaintiff was provided over-the-counter arch supports (as opposed to custom-made arch supports).[48]

Under the circumstances, *at most*, the evidence indicates that there may have been a hint of negligence on the part of Defendants Frawley and/or Peet. However, even if true, such negligence would not be enough to make Defendants Frawley or Peet liable to Plaintiff under the Eighth Amendment.[49]

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants Frawley and Peet.

C.     **Whether Plaintiff Has Failed to Exhaust His Administrative Remedies with Regard to His Claim that Defendants Frawley and Peet Improperly Confiscated His Arch Supports**

In the alternative, Defendants argue that Plaintiff's claim against Defendants Frawley and Peet should be dismissed because Plaintiff did not exhaust his available administrative remedies with regard to his claim that Defendants Frawley and Peet improperly confiscated his arch

---

[47]     (Dkt. No. 55, Part 4, at Ex. E-3 [Defs.' exhibits, attaching Plf.'s medical record dated 5/21/02]; Dkt. No. 1, Ex. A [Plf.'s Verified Compl., attaching medical record dated 11/3/93, regarding prescription of "custom-made Aliplast/plastazote laminate orthoses"]; Dkt. No. 1, Ex. B [Plf.'s Verified Compl., attaching medical records date 2/8/01, indicating that he was prescribed the new arch supports, i.e., the ones with metal inserts, because the former arch supports, i.e., the ones with plastic inserts, had "worn out" on or before 2/8/01]; Dkt. No. 1, ¶¶ 20-21 & Ex. F [Plf.'s Verified Compl., asserting occurrence of medical visit on 5/21/02 regarding arch supports].)

[48]     (Dkt. No. 55, Part 4, at F-2, F-3 [Defs.' Rule 7.1 Statement, attaching Plf.'s medical records dated 6/21/02, 6/24/02 and 7/1/02]; Dkt. No. 58, ¶ 7 [Plf.'s Supp. Opp. to Defs.' Motion].)

[49]     *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

supports.[50]   Because I have already concluded that the Court should dismiss Plaintiff's claim

against Defendants Frawley and Peet (*see*, *supra*, Part III.B.), I need not reach this argument.

However, in the interest of thoroughness, I will do so.

Defendants contend that Plaintiff never filed a grievance with regard to this claim.  In

support of this argument, they offer an unlabelled, unsigned two-page document (presumably a

computer print out) listing 26 grievances filed by Plaintiff between March 11, 2002, and

November 21, 2002, but listing no grievance filed by Plaintiff regarding any confiscation of his

arch supports.[51]  Defendants further argue that Plaintiff has adduced no evidence (only an

"unsupported allegation") that he filed a grievance with regard to that improper confiscation.[52]

With some reluctance, I must disagree with Defendants.  It is true that Plaintiff's

opposition papers are woefully inadequate, as Defendants point out in their reply papers.[53]  It is

further true that the Court has no duty to conduct an independent review of the record to find

proof of a factual dispute.  However, the Court certainly retains the discretion to conduct such an

independent review.  I believe that this discretion is no more appropriately exercised than when,

as here, the factual dispute is rather glaring.

Specifically, I cannot help but notice that Plaintiff's *Verified* Complaint specifically

alleges that (1) "[o]n or about April 29, 2002, plaintiff filed an institutional grievance for the

---

[50]      (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law].)

[51]      (*See* Dkt. No. 55, Part 3, ¶ 4 [Defs.' Rule 7.1 Statement, citing to "Exhibit A,"
attached at Dkt. No. 55, Part 4].)

[52]      (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law].)

[53]      (Dkt. No. 59, Part 1 [Defs.' Reply Affirm.].)

return of his medical arch supports," (2) "[u]pon filing this grievance against defendants Frawley

and Peet, plaintiff inquired countless times [of Inmate Grievance Sergeant Volker and an Inmate

Grievance Clerk regarding] the status of this grievance, wherein plaintiff was informed by both

[the Sergeant and the Clerk that] the grievance was received, filed and an upcoming hearing

would be held," and (3) "on or about July 12, 2002, . . . defendant [Graubard] informed plaintiff

she was unable to find plaintiff's grievance regarding Nurse Frawley['s] confiscation of

plaintiff's arch supports."[54]

     Verified allegations such as these constitute *sworn assertions* (much like those contained

in an affidavit), and may be used to defeat a motion for summary judgment.[55]  Here, the sworn

assertions in question appear to be based on personal knowledge, and are sufficiently specific--

providing dates, identities of persons, and subject matter of conversations.[56]  I note that the

---

[54]    (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n.4 [Plf.'s Verified
Compl.].)

[55]    *See*, *e.g.*, *Patterson*, 375 F.3d at 229-230 (partially vacating and remanding
decision issued by Northern District of New York because the plaintiff's verified allegation that a
lieutenant engaged in intimidating behavior that was "notoriously racist," together with other
evidence, created an issue of material fact as to plaintiff's hostile work environment claim under
42 U.S.C. § 1983 – specifically, with respect to whether the lieutenant's conduct was sufficiently
humiliating to alter the conditions of the plaintiff's employment); *Fitzgerald*, 251 F.3d at 362-
363 (partially vacating and remanding decision issued by Northern District of New York because
the plaintiff's verified allegations of a defendant's "constant stream of unjustified criticisms of
her work described specific, related instances of harassment" were sufficient to create an issue of
material fact as to the plaintiff's hostile work environment claim under 42 U.S.C. § 1983), *cert.
denied*, 536 U.S. 922 (2002); *Colon*, 58 F.3d at 872 (partially vacating and remanding decision
issued by Northern District of New York because the plaintiff's verified allegations regarding the
temporal proximity between the filing of disciplinary charges against the plaintiff and the filing
of two lawsuits by the plaintiff were sufficient to create an issue of material fact as to the
plaintiff's retaliation claim under 42 U.S.C. § 1983).

[56]    (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n.4 [Plf.'s Verified
Compl.].)

representations allegedly made to Plaintiff about the status of his grievance (i.e., that the grievance had been received and filed, and that an upcoming hearing would be held) would not be hearsay to the extent they were offered for a purpose other than to show the truth of the matters asserted (e.g., to show the reasonableness of Plaintiff's reliance on those representations, or to explain why he did not attempt to file another grievance within the 14-day deadline for such grievances).

Furthermore, Plaintiff attached to his Verified Complaint (1) a copy of a July 12, 2002, communication from Defendant Graubard, stating, "[w]e have been unable to find any grievance from you concerning Nurse Frawley confiscating your arch supports," and (2) a copy of what Plaintiff claims is the grievance he filed on April 29, 2002.[57]  I note that Plaintiff offered duplicate copies of these two documents in his papers in opposition to Defendants' motion.[58]  Under the circumstances, I simply cannot find that Plaintiff has adduced no evidence that he exhausted his administrative remedies with respect to his grievance that Defendants Frawley and Peet improperly confiscated his arch supports.

This finding of a factual dispute is not inconsistent with Local Rule 7.1(a)(3), which states that facts set forth in a defendant's Rule 7.1 Statement "shall be deemed admitted" unless specifically controverted by the opposing party.  That Local Rule does not require an opposing party to "specifically controvert" defendant's factual assertions *through the use of a Rule 7.1 Response*.  Such an approach is, without doubt, the preferred method of creating a factual dispute; and (as indicated above) the Court has no *duty* to go beyond an opposing party's Rule

---

[57]     (Dkt. No. 1, Exhibits G, H at 2 [Plf.'s Verified Compl.].)

[58]     (Dkt. No. 58, at Exhibits F, G at 2 [Plf.'s Response Papers].)

7.1 Response to find proof of a factual dispute.  However, the Court has the *discretion* to go beyond an opposing party's Rule 7.1 Response to find proof of a factual dispute; and Local Rule 7.1 does not deprive the Court of that discretion.[59]  I am mindful that Rule 56(e) expressly provides that, "[i]f the adverse party does not . . . respond [with affidavits or other papers setting forth specific facts showing that there is a genuine issue for trial], summary judgment, *if appropriate*, shall be entered against the adverse party."[60]  I simply cannot find it *appropriate* to grant summary judgment to Defendants on the basis of a failure to exhaust, where conspicuous evidence exists sufficient to create a factual dispute on the issue.[61]

Furthermore, my treatment of Plaintiff's verified allegations as sworn assertions is not inconsistent with my finding that Plaintiff, due to his litigiousness, does not deserve the special solicitude normally afforded to *pro se* civil rights litigants.  The rule that verified complaints shall be treated as affidavits for purposes of summary judgment motions has nothing to do with a

---

[59]    *See Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (holding that similar local rule in Southern and Eastern Districts of New York, i.e., "Local Rule 56.1," did not deprive district court of discretion to *sua sponte* "conduct an assiduous review of the record").  For example, Local Rule 7.1(b)(3) provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where* the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."  N.D.N.Y. L.R. 7.1(b)(3).

[60]    Fed. R. Civ. P. 56(e) [emphasis added].

[61]    As the Second Circuit has held, "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  "Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that . . . the moving party is entitled to a judgment as a matter of law.'"  *Champion*, 76 F.3d at 486.

non-movant's status as a *pro se* litigant or as a civil rights litigant.[62]

Finally, I will analyze Defendants' lack-of-evidence argument in the context of the

Second Circuit's three-part test for exhaustion.  The Prison Litigation Reform Act of 1995

("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available

administrative remedies: "No action shall be brought with respect to prison conditions under

§1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."[63]  The Department of Correctional

Services ("DOCS") has available a well-established three-step grievance program:

> First, an inmate is to file a complaint with the Grievance Clerk.  An
> inmate grievance resolution committee ("IGRC") representative has
> seven working days to informally resolve the issue.  If there is no
> resolution, then the full IGRC conducts a hearing and documents the
> decision.  Second, a grievant may appeal the IGRC decision to the
> superintendent, whose decision is documented.  Third, a grievant may
> appeal to the central office review committee ("CORC"), which must
> render a decision within twenty working days of receiving the appeal,
> and this decision is documented.

*White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct

---

[62]     *See*, *e.g.*, *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 144, 147, n.14 (2d Cir.
2001) (applying rule in non-civil rights case in which the plaintiff had been represented by
counsel during district court's decision on defendants' motion to dismiss under Rule 12[b][1]);
*Adirondack Cycle & Marine, Inc. v. Am. Honda*, 00-CV-1619, 2002 WL 449757, at *1
(N.D.N.Y. March 18, 2002) (McAvoy, J.) (applying rule in non-civil rights case in which the
plaintiff had been represented by counsel during decision on defendant's motion for summary
judgment); *cf. Patterson*, 375 F.3d at 229-230 (applying rule in civil rights case in which the
plaintiff had been represented by counsel during decision on defendants' motion for summary
judgment, *see* 00-CV-1940, 2002 WL 31677033 [N.D.N.Y. Oct. 30, 2002]); *Fitzgerald*, 251 F.3d
at 362-363 (applying rule in civil rights case in which the plaintiff had been represented by
counsel during decision on defendants' motion for summary judgment, *see* 36 F. Supp.2d 490
[N.D.N.Y. 1998]).

[63]     42 U.S.C. § 1997e.

3, 2002) (citing N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7).  Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[64]

However, the Second Circuit has recently held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."  *Id*. (citations and internal quotations omitted).

### 1.    Availability of Administrative Remedies

"When an inmate's reasonable attempts to exhaust available administrative remedies are impeded by a correctional officer, the remedy may be deemed unavailable, thereby excusing the

---

[64]    *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

inmate from technically exhausting his remedies." *Veloz v. New York*, 339 F. Supp.2d 505, 515-516 (S.D.N.Y. 2004) [citations omitted].[65]  Some courts have suggested that an inmate has exercised a *reasonable* effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official.[66]

---

[65]    *See also Thomas v. N.Y.S. Dep't of Corr. Servs.*, 00-CV-7163, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002) ("[W]here a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the prisoner . . . ."); *O'Connor v. Featherstone*, 01-CV-3251, 2002 U.S. Dist. LEXIS, at *5 (S.D.N.Y. Apr. 29, 2002) ("[A]n inmate may . . . defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where . . . an inmate has makes a 'reasonable attempt' to exhaust his administrative remedies . . . ."); *Rodriguez v. Hahn*, 99-CV-11663, 2000 U.S. Dist. LEXIS 16956, at *4 (S.D.N.Y. Nov. 22, 2000) (denying defendants' motion to dismiss for failure to exhaust administrative remedies where inmate's efforts "evidence[d] a reasonable attempt to exhaust [his administrative remedies]"); *Baughman v. Harless*, 142 Fed. Appx. 354, 359 (10th Cir. 2005) ("If prison officials prevent a prisoner from proceeding with exhaustion of administrative remedies, prison officials render that remedy unavailable such that a court will deem the procedure exhausted."); *Brown v. Croak*, 312 F.3d 109, 112-113 (3d Cir. 2002) (because "[prison] officials thwarted [plaintiff's] efforts to exhaust his administrative remedies . . . the formal grievance proceeding required by [the prison grievance system] was never 'available' to [plaintiff] within the meaning of [the PLRA]"), *cited by Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under [the Prison Litigation Reform Act]."), *cited by Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) (holding that "[t]he defendants' failure to implement the multiple rulings in [plaintiff's] favor rendered administrative relief 'unavailable' under the PLRA.").

[66]    *See, e.g., Thomas v. N.Y.S. Dep't of Corr. Servs.*, 00-CV-7163, 2002 WL 31164546, at *2-3 (S.D.N.Y. Sept. 30, 2002) (genuine issue of material fact existed about whether prisoner made "reasonable attempt" to file a grievance, where prisoner adduced some evidence that he had filled out grievance, had attempted to file it, but had been denied a pass enabling him to file it); *O'Connor v. Featherstone*, 01-CV-3251, 2002 U.S. Dist. LEXIS, at *5 (S.D.N.Y. Apr. 29, 2002) ("[A]n inmate may . . . defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where . . . an inmate has made a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts."); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.") [citations

However, other courts have indicated that an inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a *reasonable* effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance.[67]

Of course, here, Plaintiff alleges (and introduces at least some evidence indicating) that he made *more* than simply an initial effort to file a grievance about the (alleged) confiscation of his arch supports by Defendants Frawley and Peet.  For example, he also alleges (and introduces at least some evidence indicating) that (1) in the days and weeks following April 29, 2002, he sought and received assurances from two corrections officers (other than Defendant Graubard) that his grievance had been received and filed, and that a hearing was imminent, (2) after being transferred to another prison, he twice wrote to Defendant Graubard regarding the issue, and was

---

omitted]; *Baughman*, 142 Fed. Appx. at 359 ("[A]dministrative remedies may be found unavailable . . . where the prisoner supports his allegations that he placed his grievances in the mail, but they were lost or destroyed and therefore his efforts to exhaust available administrative remedies were impeded by correctional officers.").

[67]      I note that all of these decisions were issued by the Southern District, and all but one were issued before the creation of Second Circuit's three-part exhaustion analysis in August of 2004.  *See Veloz*, 339 F. Supp.2d at 515-516 (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," there was "no evidence that any particular officer thwarted his attempts to file," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *Nunez v. Goord*, 172 F. Supp.2d 417, 428-429 (S.D.N.Y. 2001) (rejecting inmate's argument that the prison's grievance procedure had been rendered ineffective by the practice of prison officials' losing or destroying grievances, because, instead of filing a grievance with respect to his failure-to-protect claim, inmate wrote a letter to superintendent and did not follow up when he received no response); *cf. Martinez v. Williams*, 186 F. Supp.2d 353, 357 (S.D.N.Y. 2002) (inmate who received no response to grievance "could have and should have appealed grievance in accord with grievance procedure"), *accord*, *Waters v. Schneider*, 01-CV-5217, 2002 WL 727025, at *1-2 (S.D.N.Y. Apr. 23, 2002).

advised (more than two months after the events in question) that Defendant Graubard was unable to find Plaintiff's grievance, and (3) on August 6, 2002, Plaintiff filed a grievance containing an implicit request for an exception to the 14-day filing requirement, which request was subsequently either denied or not addressed by the Mohawk C.F. Superintendent and CORC.[68]

Under the circumstances, I find that Plaintiff has exercised a reasonable effort to exhaust his administrative remedies, and that at least a question of fact exists about whether those efforts were impeded by correctional officers (other than Defendant Graubard) sufficient to render Plaintiff's administrative remedies unavailable under the circumstances. I believe that my finding is supported by this Court's recent decision in *Hoover v. Hardman*, 99-CV-1855, 2005 WL 1949890 (N.D.N.Y. Aug. 15, 2005) (Scullin, C.J.).

In *Hoover*, this Court held that an inmate had created an issue of fact on the issue of availability of administrative remedies when he argued that his grievances had been "lost in the

---

[68]     Defendants argue that Plaintiff's efforts to grieve the confiscation of his arch supports did not include his filing of an August 6, 2002, grievance at Mohawk C.F. (Dkt. No. 59, Part 1, ¶ 10 [Defs.' Reply Affirm.]; Dkt. No. 1, Ex. H at 1 [Plf.'s Verified Compl., attaching the August 6, 2002, grievance]; Dkt. No. 58, Ex. G at 1 [Plf.'s Response Papers, attaching the August 6, 2002, grievance].) I agree with Defendants that, rather than focusing mainly on the confiscation of his arch supports, Plaintiff's August 6, 2002, grievance focused mainly on Defendant Graubard's (alleged) malfeasance with regard to the loss or destruction of Plaintiff's (allegedly) properly filed April 29, 2002, grievance. (*Id.*) However, Plaintiff's August 6, 2002, grievance (1) attached a copy of his April 29, 2002, grievance, and (2) implicitly but intelligibly requested, in the "Action Requested" portion of the grievance, an exception to the normal 14-day filing deadline (for that April 29, 2002, grievance) imposed by 7 N.Y.C.R.R. § 701.7(a)(1). (*Id.* [erroneously citing this regulation as "7 N.Y.C.R.R. § 707.7(a)(1)."].) *See Brownell v. Krom*, 04-CV-6364, 2006 WL 1174080, at *4 (2d. Cir. May 3, 2006) (requiring merely "notice pleading" for exhaustion to be achieved; adding that "[a]ll the grievance need do is object intelligibly to some asserted shortcoming."). Subsequently, both the Mohawk C.F. Superintendent and CORC either failed to address or implicitly denied this request for an extension of the 14-day filing deadline. (Dkt. No. 1, Ex. H-3; Dkt. No. 58, Exs. G-3, G-4.) *See Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (remedies not "available" to prisoner where officials failed to respond to his grievance), *cited by Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004).

system," and he supported that argument by adducing (1) sworn testimony that the prison's

Inmate Grievance Review Committee had not been operating adequately at the time in question,

and (2) evidence that he had submitted a September 27, 1999, grievance for filing but that the

grievance had never in fact been filed or investigated. *Hoover v. Hardman*, 99-CV-1855, Report-

Recommendation, at 10-13 (N.D.N.Y. Nov. 11, 2004) (Lowe, M.J.), *adopted*, 2005 WL

1949890, at *3 (N.D.N.Y. Aug. 15, 2005) (Scullin, C.J.).[69]

　　　In reaching my conclusion, I respectfully reject Defendants' argument that "Plaintiff [has]

admit[ted] the availability of an administrative grievance process in his Complaint."[70]

Defendants are correct insofar as they point out that, in his Verified Complaint, Plaintiff

answered "Yes" to the questions "Is there a prisoner grievance procedure at this facility?" and

"[D]id you present the facts relating to your complaint in this grievance program."[71]  However, I

do not see how these two verified allegations are inconsistent with Plaintiff's other verified

allegations that (1) he filed a grievance on or about April 29, 2002, (2) he was subsequently

assured that grievance had been filed, and (3) he was subsequently informed that no record

existed of the grievance having been filed.[72]  In any event, even if Plaintiff's two verified

---

[69]　　　I believe that my finding is also supported by other district court decisions in this Circuit. *See, e.g., Rodriguez v. Hahn*, 99-CV-11663, 2000 U.S. Dist. LEXIS 16956, at *3-5 (S.D.N.Y. Nov. 22, 2000) (inmate made reasonable attempt to exhaust his administrative remedies where he sent various letters regarding his complaint, and corrections officers never filed some of the inmate's grievances).

[70]　　　(Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law, citing Paragraph 4 of Plaintiff's Complaint].)

[71]　　　(Dkt. No. 1, ¶¶ 4.a., 4.b. [Plf.'s Compl.].)

[72]　　　(Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n.4, Exhibits G, H at 1 [Plf.'s Compl.].)

allegations in Paragraph 4 were inconsistent with his other verified allegations, that inconsistency, under the circumstances, would merely create an issue of fact for a jury.

For these reasons, I would find that Plaintiff has created an issue of fact with regard to whether the administrative remedies (allegedly) not pursued by him were in fact "available" to him.

        **2.**      **Estoppel**

Because of my finding above in Part III.C.1., I need not reach the issue of whether Defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether Defendants' own actions inhibiting Plaintiff's exhaustion of remedies may estop one or more of the Defendants from raising Plaintiff's failure to exhaust as a defense. However, I note that, if I were to reach this issue, I would find that Defendants Frawley and Peet would not be estopped from asserting this defense.

Specifically, Defendants Frawley and Peet have preserved their affirmative defense of non-exhaustion by raising it in their Answer.[73]  Moreover, no evidence exists that either Defendant Frawley or Defendant Peet is estopped from raising this defense because of his or her actions inhibiting Plaintiff's exhaustion of remedies.  Indeed, it was Inmate Grievance Sergeant Volker and an Inmate Grievance Clerk (and not either Defendant Frawley or Defendant Peet) who allegedly represented to Plaintiff that the grievance had been filed; it was Defendant Graubard (and not either Defendant Frawley or Defendant Peet) who allegedly failed to process (or lost) the grievance.

---

[73]     (Dkt. No. 29, Part 1, ¶ 14 [Defs.' Answer].)

### 3.   "Special Circumstances" Justifying Failure to Exhaust

Again, because of my finding above in Part III.C.1., I need not reach the issue of whether "special circumstances" have been plausibly alleged that justify Plaintiff's failure to comply with the administrative procedural requirements.  However, I note that, if I were to reach this issue, I would find that such special circumstances have been plausibly alleged (and supported).

Specifically, Plaintiff has alleged (and adduced at least some evidence indicating the existence of) the following facts: (1) he filed a grievance at Elmira C.F. regarding the confiscation of his arch supports on April 29, 2002; (2) in the days and weeks following April 29, 2002 (during the period in which he had to grieve the confiscation), he sought and received assurances from two corrections officers (other than Defendant Graubard) that his grievance had been received and filed, and that a hearing was imminent; (3) on or about June 10, 2002, he was transferred to the Walsh Regional Medical Unit at Mohawk C.F.; and (4) before and after his transfer, he more than once wrote to Defendant Graubard regarding the issue, and was finally informed, on July 12, 2002, that Defendant Graubard was unable to find Plaintiff's grievance. As a result, by the time he learned that his grievance had been lost, he was many miles removed from the location of the confiscation at issue (having been transferred to a different correctional facility), and was some 80 days removed from the date of the confiscation at issue–all apparently due to events that were mostly outside his control.

Under the circumstances, I would find that a question of fact has been created about whether special circumstances exist justifying Plaintiff's failure to exhaust his administrative remedies.  Again, I believe that my finding would be supported by this Court's recent decision in *Hoover*, which held that, even if an inmate's administrative remedies had been available to him

at the time in question, the inmate had created an issue of fact on the issue of whether special

circumstances existed excusing his failure to exhaust those remedies when he argued (and

adduced evidence indicating) that his grievances had been "lost in the system."[74]  In addition, I

believe that my finding would be supported by this Second Circuit's recent decision in *Brownell*

*v. Krom*, 04-CV-6364, 2006 WL 1174080 (2d. Cir. May 3, 2006), which appears to suggest that,

under the circumstances, Plaintiff did not even have a duty to request an exception to the usual

14-day deadline for the filing of such grievances, as authorized by 7 N.Y.C.R.R. § 701.7(a)(1).[75]

    Although I do not believe that my finding needs any further factual support, I believe that

my finding is further supported by the fact that, on or about August 6, 2002, Plaintiff did in fact

request an exception to the usual 14-day grievance-filing deadline, as authorized by 7

N.Y.C.R.R. § 701.7(a)(1).[76]  Specifically, at the end of his August 6, 2002, grievance, he stated:

"Action Requested: . . . . [S]ince mitigating circumstances exist[], that the attached grievance

originally filed April 29, 2000, which has not been resolved, be filed accordingly and resolved

---

[74]    *Hoover*, 99-CV-1855, Report-Recommendation, at 10-13, *adopted*, 2005 WL 1949890, at *3.

[75]    In *Brownell*, a prisoner claimed that prison officials had lost his property (including legal materials) during a prison transfer.  Subsequent actions by prison officials delayed the date on which the prisoner obtained reason to believe that the loss of his property was intentional.  By the time he discovered the evidence, it was several months after his property had disappeared, which placed him outside of the 14-day time limit for filing a grievance.  The Second Circuit held that, although the prisoner could have, at that point, sought an exception to the 14-day time limit but did not do so, "[n]onetheless, we conclude that [the prisoner's] failure to seek the further administrative remedies that were available to him were reasonable." *Brownell v. Krom*, 04-CV-6364, 2006 WL 1174080, at *6 (2d. Cir. May 3, 2006).

[76]    (Dkt. No. 1, Ex. H-1 [Plf.'s Compl., attaching Grievance No. MHK-6858-02]; Dkt. No. 58, Ex. G-1 [Plf.'s Response Papers, attaching Grievance No. MHK-6858-02].)

appropriately . . . pursuant to DOCS' Directive 4040.  See, 7 N.Y.C.R.R. § 707.7(a)(1) [sic]."[77]

Given the Second Circuit's recent pronouncements in *Brownell v. Krom*,[78] I believe that this

request was sufficiently intelligible to deserve an explicit response from the Mohawk C.F.

Superintendent and CORC.  However, that request either was not addressed or was implicitly

denied by the Mohawk C.F. Superintendent and CORC.[79]  I believe that this a failure to explicitly

decide the issue is an additional "special circumstance" excusing Plaintiff's failure to exhaust.[80]

Because I reject Defendants' failure-to-exhaust argument, I need not, and do not, analyze

their additional argument that Plaintiff's exhausted claim should be dismissed along with his

unexhausted claim (*see* Dkt. No. 55, Part 6, at 6), except to emphasize the existence of binding

Second Circuit precedent rejecting such an argument.  *See Oritz v. McBride*, 380 F.3d 649, 656,

663 (2d. Cir. 2004) ("The question, then, is whether the district court was therefore required,

under a so-called 'total exhaustion' rule, to dismiss the action in its entirety despite the presence

of an otherwise viable, fully exhausted claim.  We think not."), *cert. denied*, 125 S.Ct. 1398

(2005).

---

[77]     (*Id*. [erroneously citing pertinent regulation as "7 N.Y.C.R.R. § 707.7(a)(1)" which should have been 7 N.Y.C.R.R. § 701.7(a)(1)].)

[78]     *See Brownell v. Krom*, 04-CV-6364, 2006 WL 1174080, at *4 (2d. Cir. May 3, 2006) ("All the grievance need do is object intelligibly to some asserted shortcoming.").

[79]     (Dkt. No. 1, Ex. H-3; Dkt. No. 58, Exs. G-3, G-4.)

[80]     *See Brownell v. Krom*, 04-CV-6364, 2006 WL 1174080, at *6-7 (2d. Cir. May 3, 2006) (concluding that "special circumstances" existed based, in part, on the fact that prison officials erroneously decided that the grievance the plaintiff filed "deserved no consideration").

### D.      Whether Defendants Are Entitled to Qualified Immunity

In the alternative, Defendants argue that Plaintiff's claim against all three Defendants should be dismissed because they are entitled to qualified immunity.[81]  Because I have already concluded that the Court should dismiss Plaintiff's claims against all three Defendants (*see*, *supra*, Parts III.A., III.B.), I need not, and do not, reach this argument, except to make three points.

First, Defendants correctly recite the general law regarding qualified immunity.  Second, although I disagree with Defendants to the extent they argue that an inmate's right to *file* a grievance is not clearly established constitutional right, I agree with Defendants to the extent they argue that, at the very least, corrections officers of reasonable competence could have concluded that Defendant Graubard was not, at any time, violating that right.  Third, I agree with Defendants to the extent they argue that, at the very least, corrections officers of reasonable competence could have concluded that Defendants Frawley and Peet did not violate any of Plaintiff's clearly established rights.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 55) be **<u>GRANTED</u>**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

---

[81]       (Dkt. No. 55, Part 6 at 17-20 [Defs.' Mem. of Law].)

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 9, 2006
       Syracuse, New York

George H. Lowe
United States Magistrate Judge